REED YATES FARMS, INC., Plaintiff, v. G. ROBERT YATES, Defendant and Counterplaintiff and Appellant and Third-Party Plaintiff and Counter-Counterdefendant (Don Yates *et al.*, Counterdefendants and Counter-Counterplaintiffs; Mabel Yates, Third-Party Defendant and Counterplaintiff; Jack C. Vieley, Petitioner-Appellee).

Fourth District   No. 4—88—0002

Opinion filed July 14, 1988.

520

G. Robert Yates, of Fort Lauderdale, Florida, appellant *pro se.*

Jack C. Vieley, of Peoria, appellee *pro se.*

JUSTICE KNECHT delivered the opinion of the court:

Defendant G. Robert Yates (G. Robert) appeals an order which enforced a lien for attorney fees. The order was entered following protracted and hotly contested proceedings which resulted in a family-owned horse farm being placed in receivership for the purpose of liquidation.

The initial complaint in this cause was filed on June 19, 1983, by Reed Yates Farms, Inc. (Reed Yates), and named G. Robert as defendant. Among the relief sought in counts I through V was money damages for the boarding of G. Robert's horses and an injunction requiring G. Robert to endorse and return to the court for distribution a check payable jointly to him and Reed Yates, which represented proceeds from the sale of a horse jointly owned by those parties. Count VI was premised on an alleged joint venture agreement between Reed Yates and G. Robert under which the parties owned as tenants in common certain breeding stock and other horses. Reed Yates requested the court order an accounting of the affairs of the joint venture, order a partition thereof, and determine the equitable portion of the liquidation proceeds to be delivered to G. Robert and Reed Yates. In an additional count filed August 10, 1984, Reed Yates requested dissolution of the joint venture and liquidation of the joint venture assets.

In a counterclaim filed August 16, 1984, G. Robert asserted that since 1972, he and Don Yates (Don) engaged in a joint venture known as Reed Yates Farm Partnership (the partnership) for the purpose of boarding, breeding and selling race horses. The counterclaim further alleged, *inter alia*, Don misappropriated partnership assets and failed to provide G. Robert with adequate reports concerning partnership affairs. G. Robert stated he was informed and believed an independent audit of his, Don's, Mabel Yates', Reed Yates' and the partnership's assets would establish, *inter alia*, he is the owner of and entitled to all of the Reed Yates assets, and the other parties owe him substantial sums of money.

On the basis of the above allegations, G. Robert requested (1) the court appoint an independent auditor to audit the books and records

of Don, Reed Yates, and the partnership and determine the balances due by the parties to each other; (2) Don be ordered to turn over to such auditor all books and records of himself, the partnership and Reed Yates; (3) upon completion of the audit, the court determine the interests of G. Robert and Don in the partnership and the balances or assets due to or from the partnership by any party; and (4) after the above determinations, the court dissolve the partnership and distribute its assets to G. Robert and Don on the basis of the results of the audit.

On October 2, 1985, G. Robert filed an amendment to his counterclaim, which added counts II through V. Count II repeated the allegations of Robert's initial counterclaim, and on the basis thereof requested money damages in excess of $15,000 for the counterdefendants' alleged unlawful and tortuous conversion of G. Robert's property. Count III alleged that in December 1977, Don and G. Robert entered into a joint venture by terms of which they agreed to purchase a horse named Rorty Hanover, which was to be used for stud purposes and was to be jointly titled in both of their names. G. Robert stated, however, Don took delivery of Rorty Hanover in his own name without authorization from G. Robert to do so, thereby converting G. Robert's property to his own use. On the basis of the above allegations, Robert requested money damages. Counts IV and V essentially requested punitive damages on the basis of the alleged wilful, wanton and fraudulent character of the acts alleged in the initial counterclaim and in count III, respectively.

G. Robert filed yet another counterclaim on October 2, 1985. The allegations of this counterclaim were, however, basically the same as those of G. Robert's previous counterclaims, except G. Robert also accused Mabel Yates (Mabel) of converting partnership assets to her own use and failing to make proper reports to G. Robert concerning partnership affairs.

A bench trial was held on January 8, 9, and 13, 1986.

In an order filed January 22, 1986, the circuit court found that on March 16, 1978, Don, Robert, and Mabel agreed to the issuance of stock in Reed Yates Farms, Inc., in the proportion of 49% to Don, 49% to Robert, and 2% to Mabel. The court found because he signed a document agreeing to distribution of the corporate stock in this manner, and signed a document in which he applied for insurance as a vice-president of Reed Yates, G. Robert is estopped from denying the corporate existence of Reed Yates. Moreover, the court found G. Robert's allegations of fraud and conversion were not substantiated by the evidence and were not proved. The court also found G. Robert

was obligated to pay all board costs for animals owned in whole or in part by him and boarded at Reed Yates, except for board with respect to two animals which he owned and which Don refused to breed on or about March 8, 1983.

The court further found it appropriate and necessary to appoint a receiver to liquidate the Reed Yates assets. After paying all debts, the receiver was to distribute the assets of the corporation to Robert, Don, and Mabel in proportion to the amount of stock in the corporation which the court found they owned. The receiver was to deduct from Robert's distributions the amount of the accumulated board bill which he owed and was to deduct from Don's distributions an amount representing board for the two horses belonging to G. Robert which Don refused to breed. Also, the receiver was ordered to pay to G. Robert any unpaid director's fees and was given discretion to pay Don an appropriate amount for work which he did in connection with the sale at auction of horses belonging to Reed Yates at Lexington, Kentucky, in December 1985, in lieu of a $5,000 bonus which the corporate directors awarded him in December 1985. Finally, the court held although the receiver was to account for all receipts and disbursements from the date of his appointment and qualification, there was to be no accounting for the past acts of the parties, since G. Robert had already conducted a review of the corporate records through his agents.

G. Robert appealed the circuit court's order, alleging (1) improper denial of his requests for a jury trial; (2) Reed Yates Farm, Inc., is not a valid corporation, or, alternatively, payments to Don for his services as a corporate director and president were illegal because his affirmative vote was necessary to carry the motions authorizing those payments; (3) the circuit court's denial of G. Robert's requests for actual and punitive damages (apparently on the basis of G. Robert's counterclaims) was against the manifest weight of the evidence; and (4) the circuit court erred in not ordering an accounting. In a Rule 23 order filed September 8, 1986 (*Reed Yates Farms, Inc. v. Yates* (1986), 145 Ill. App. 3d 1171, 511 N.E.2d 282 (order under Supreme Court Rule 23)), this court rejected all of G. Roberts' arguments and affirmed the circuit court's order *in toto*. This court held G. Robert waived his argument that the denial of his request for actual and punitive damages was contrary to the manifest weight of the evidence, by failing to include in his opening brief references to the portions of the record which allegedly supported this argument. The supreme court denied a petition for leave to appeal from this order on February 6, 1987. *Reed Yates Farms, Inc. v. Yates* (1987), 113 Ill. 2d 584.

In the meantime, G. Robert on September 26, 1986, filed with the Attorney Registration and Disciplinary Commission (ARDC) a complaint against attorney Jack C. Vieley, who had represented G. Robert in this cause since November 15, 1985. Among the charges stated in the complaint were incompetent representation in this cause; refusal to allow G. Robert input into the appellant's brief in the previous appeal in this cause; failure to advise G. Robert of the filing of this court's opinion in the previous appeal; misinformation in an effort to dissuade G. Robert from appealing; and violation of the attorney-client privilege "in sending a copy of our contract to the opposing law firm." On March 19, 1987, the ARDC advised Vieley it had concluded its investigation into G. Robert's charges and determined to proceed no further in the matter.

On October 21, 1986, attorney Vieley filed a motion to withdraw as G. Robert's counsel, which the court allowed on November 19, 1986. Also on October 21, 1986, attorney Vieley filed a petition for adjudication of a lien for attorney fees with respect to services which he rendered on behalf of G. Robert in this cause. On February 20, 1987, attorney Vieley filed a second petition to adjudicate attorney's lien. Count I of this petition requested judgment against G. Robert in the amount of $44,607.20 and payment of this amount, plus 40% of all future payments due G. Robert as a result of the liquidation of Reed Yates, from money payable to G. Robert by the Reed Yates receiver. This claim was premised on a contract for legal services entered into by G. Robert and attorney Vieley on November 13, 1985, which provides in pertinent part:

"CONTRACT TO HIRE ATTORNEY JACK C. VIELEY
* * *

1. Client hereby retains and employs Attorney to represent Client in the prosecution and recovery or settlement, including bringing suit, of Client's claim for damages against DON YATES, DON YATES d/b/a REED YATES FARM PARTNERSHIP, and REED YATES FARMS, INC. and MERRICK HAYES et al.

2. In consideration for legal services rendered and to be rendered in the prosecution and defense of a certain case entitled REED YATES FARMS, INC., YATES d/b/a REED YATES FARM PARTNERSHIP, and REED YATES FARMS, INC., No. 83—CH—58 now pending in the Circuit Court of McLean County, Illinois, Client agrees to pay Attorney and his Associates an initial non-refundable retainer in the sum of $10,000.00 in order to pay Attorney for his time in research, review of the

record, and investigation of the facts of the case. In addition to the $10,000.00 retainer, Client agrees to pay Attorney the sum of 33⅓% of all sums recovered and of the fair market value of all property recovered from said claims whether recovery be made by suit, settlement, or in any other manner (Client to receive full credit for the initial $10,000.00 retainer paid to Attorney against the 33⅓% contingent fee). However, in the event that there is an appeal, second trial, or retrial of REED YATES FARMS, INC., Plaintiff v. G. ROBERT YATES, Defendant/Counterplaintiff, and DON YATES, DON YATES d/b/a REED YATES FARM PARTNERSHIP, and REED YATES FARMS, INC., No. 83—CH—58, then Client agrees to pay Attorney a contingent fee of 50% 40% with Client receiving full credit for the $10,000.00 retainer against the 50% 40% contingent fee."

Count II of attorney Vieley's petition to adjudicate attorney's lien requested under a *quantum meruit* theory payment of fees in the amount of $12,420.81 from funds which the Reed Yates receiver owed to G. Robert. In support of this count, attorney Vieley filed a detailed affidavit of services which he performed on behalf of G. Robert in this cause. Among the services rendered was representation of G. Robert in the bench trial and preparation of briefs and presentation of oral argument with respect to the previous appeal in this cause.

In an order entered December 1, 1987, the circuit court found, *inter alia*: (1) G. Robert's allegations of fraud and conversion resulted in no recovery of damages; (2) the pleadings of all of the parties sought, *inter alia*, a dissolution of a business enterprise and liquidation, as well as other relief; (3) G. Robert and other parties were awarded their proportionate shares of the proceeds of the dissolved and liquidated business, together with other relief; (4) by reason of the nature of the litigation, it was not possible to determine what efforts of what attorneys produced particular results, and the work of the attorneys for all of the parties contributed to and produced the final results at trial; (5) since attorney Vieley's efforts partially, but not wholly, produced the recovery for G. Robert, Vieley was entitled to compensation for his services on a *quantum meruit* basis and not on a contingent fee basis; (6) attorney Vieley was entitled to total compensation on a *quantum meruit* basis of $22,075, representing 220.75 hours of work at $100 per hour, less the $10,000 retainer which G. Robert had already paid him; and (7) the amount of $12,075 constitutes a lien on funds in the hands of the Reed Yates receiver which would otherwise be distributable to G. Robert. On the basis of

these findings, the court ordered the Reed Yates receiver to pay to attorney Vieley the sum of $12,075 from funds which would otherwise be distributable to G. Robert as part of his share of the proceeds of the liquidation of Reed Yates.

G. Robert's *pro se* appellate brief is rather poorly organized. So far as we can discern, his principal arguments on appeal are: (1) the circuit court erred in awarding attorney Vieley fees because (a) an attorney who voluntarily withdraws from or abandons representation of a client is not entitled to compensation for services rendered on a *quantum meruit* basis, (b) there was no recovery on the basis of G. Robert's counterclaims for damages, (c) Vieley committed acts of professional misconduct in his representation of G. Robert, and (d) attorney Vieley failed to fulfill his contract with G. Robert; (2) the circuit court improperly denied G. Robert leave to file a counterclaim against attorney Vieley requesting a refund of the $10,000 retainer; and (3) the circuit court should have awarded G. Robert a refund of the $10,000 retainer which he paid attorney Vieley because a provision for a nonrefundable retainer fee is inconsistent with other provisions of an attorney employment contract providing for payment of additional amounts on a contingency basis.

Attorney Vieley argues the contract for attorney fees here at issue was by neither its title nor its terms exclusively a contingent fee contract, and in any event he is entitled to compensation on a *quantum meruit* basis for services which he performed on G. Robert's behalf. Vieley asserts by the plain language of the employment contract which he and G. Robert executed, the $10,000 retainer was not a contingent payment. He states G. Robert's ownership interests in the property at issue in this case were denied or disputed, and $136,518 was ultimately distributed to G. Robert as a result of the Reed Yates liquidation. Vieley further argues he properly withdrew from his representation of G. Robert in this cause after G. Robert filed a complaint against him with the ARDC, since G. Robert's filing of a complaint with the ARDC made his continued representation of G. Robert impossible. Vieley also observes Judge Dearborn, who presided over the circuit court proceedings in this cause for 4½ years, was well qualified to assess the results produced by Vieley's efforts on G. Robert's behalf. Vieley contends under these circumstances, the circuit court properly awarded him attorney fees on a *quantum meruit* basis.

In his reply brief, G. Robert points out in his motion for leave to withdraw as G. Robert's attorney, Vieley stated his reason for wishing to withdraw was G. Robert's refusal to pay attorney fees pursuant to

the employment contract between he and G. Robert, and Vieley did not mention G. Robert's filing of charges with the ARDC in his motion for leave to withdraw.

■ We first consider G. Robert's contention attorney Vieley is not entitled to an award of attorney fees because of his withdrawal as G. Robert's attorney in this cause. The record supports G. Robert's statement Vieley asserted only G. Robert's refusal to pay attorney fees as a basis for his motion for leave to withdraw. Vieley contends for the first time on appeal G. Robert's filing of a complaint with the ARDC necessitated his withdrawal as G. Robert's attorney. It is not, however, necessary for us to determine whether Vieley has waived the latter contention, since both of these matters entitled Vieley to withdraw as G. Robert's attorney, and we may affirm a circuit court judgment on any basis appearing of record. *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197.

■ If during the course of litigation attorney fees are not paid when due, an attorney may demand payment of accrued fees and withdraw from the case if the fees are not paid within a reasonable time. (*Cairo & St. Louis R.R. Co. v. Koerner* (1878), 3 Ill. App. 248.) After his or her withdrawal, the attorney may recover for services rendered in the cause. (Annot., 88 A.L.R.3d 246, 264 (1978) (§10(b)).) In the present case, the record reflects Vieley demanded G. Robert pay past-due attorney fees at least as early as June 28, 1986. The period elapsed between this demand and Vieley's October 21, 1986, motion for leave to withdraw was a reasonable time in which G. Robert could have paid the fees demanded. Absent such a payment, Vieley was justified in proceeding with his motion for leave to withdraw from representation of G. Robert in this cause.

■ Our research has revealed no cases involving the question of whether an attorney who withdraws from representation of a client because of the client filing a complaint against the attorney with an attorney disciplinary agency is entitled to fees for services performed in the cause up to the date of his or her withdrawal. Previous decisions have, however, considered the question of an attorney's entitlement to fees in situations involving a breakdown in the attorney-client relationship, such as where a client degrading or humiliating an attorney forces the attorney to withdraw from representation of the client. In such cases, attorneys have been held entitled to compensation for services rendered up to the time of withdrawal. (See generally Annot., 88 A.L.R.3d 246, 261 (1978) (§9).) The rule generally applicable to entitlement to a lien for attorney fees in situations where there is a breakdown in the attorney-client relationship was stated in the re-

cent case of *Phelps Steel, Inc. v. Von Deak* (1987), 24 Mass. App. 592, 594, 511 N.E.2d 42, 44:

> "Breakdown of the lawyer-client relationship serves as good cause for withdrawal, without waiver of the attorney's lien. [Citations.] The lawyer-client relationship is founded on trust and confidentiality. When those foundations deteriorate, it is not only impractical to persist in the relationship, it diminishes the integrity of the bar to do so."

A client filing a complaint against his attorney with the ARDC—especially a complaint which impugns the attorney's integrity by alleging the attorney deliberately misinformed the client—undermines the mutual trust and confidence essential to the attorney-client relationship to the extent it constitutes good cause for the attorney's withdrawal from representation of the client. Therefore, attorney Vieley acted properly in seeking to withdraw as G. Robert's attorney in this cause following the filing of G. Robert's complaint against Vieley with the ARDC, and attorney Vieley's withdrawal under these circumstances does not bar him from receiving compensation or enforcing a lien for attorney fees with respect to services rendered in this cause up to the date of his withdrawal.

■ The question of whether G. Robert's failure to obtain a recovery on his counterclaims prevents attorney Vieley from asserting a lien for attorney fees involves interpretation of the statute governing liens for attorney fees. That statute provides in pertinent part:

> "Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action. *** Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice." (Ill. Rev. Stat. 1985, ch. 13, par. 14.)

No Illinois cases have addressed the question of whether payments pursuant to an order in an equitable proceeding which essentially divides the assets of a liquidated business among the business' owners are a recovery of money or property to which a lien for attorney fees

may attach. However, in *T. Harlan & Co. v. Bennett, Robbins & Thomas* (1907), 127 Ky. 572, 106 S.W. 287, the court considered this question in the context of an attorney lien statute substantially similar to the Illinois statute. In that case, the plaintiffs sought settlement of a copartnership existing between them and the defendant. The plaintiffs sought to charge the defendant with large sums of money, while the defendant filed counterclaims against the plaintiffs and requested judgment for such sum as might be found due him. The defendant was ultimately awarded a certain sum of money as his share of the partnership assets.

The court held a lien for attorney fees does not attach if the defendant's attorney merely succeeds in defeating a recovery by the plaintiff. The court concluded, though, a lien for attorney fees does attach where a judgment is obtained establishing a defendant's positive right to a share of partnership property, title to which was in the partnership up to the time of judgment. The court stated such a judgment constitutes a recovery within the meaning of the statute and held the defendant's attorneys were entitled to a lien for their services on a portion of the judgment entered in defendant's favor.

In the present case, G. Robert's entire interest in the Reed Yates assets was potentially at risk, and attorney Vieley's services made a substantial contribution to the amount which G. Robert ultimately obtained as a result of the liquidation proceedings. For instance, on November 21, 1985, Don Yates filed a petition for authority to sell a standardbred stallion named Rorty Hanover for $61,225. On December 3, 1985, during the time period G. Robert was represented by attorney Vieley, the circuit court entered an order which had the practical effect of blocking this proposed private sale of Rorty Hanover. The horse was ultimately sold at public auction for $120,000. Moreover, total cash payments to G. Robert resulting from the liquidation of Reed Yates amounted to at least $134,000. On the basis of the amount which G. Robert ultimately received from the liquidation of Reed Yates and the enhancement of the amount of assets available for distribution through attorney Vieley's efforts, we conclude attorney Vieley obtained a recovery on G. Robert's behalf within the meaning of the statute governing liens for attorney fees.

■ We next consider the effect of alleged professional misconduct by attorney Vieley on his entitlement to attorney fees. In earlier times, denial of attorney fees for legal work which was tainted by unprofessional conduct was in at least some jurisdictions deemed an appropriate sanction for unethical conduct which was not so serious as to require disbarment. (See, *e.g., Ingersoll v. Coal Creek Coal Co.*

(1906), 117 Tenn. 263, 98 S.W. 178.) This is not, however, the law in Illinois today.

The supreme court has exclusive and plenary jurisdiction over attorney disciplinary matters. (*In re Harris* (1982), 93 Ill. 2d 285, 443 N.E.2d 557; *Schnack v. Crumley* (1982), 103 Ill. App. 3d 1000, 431 N.E.2d 1364.) Courts other than the supreme court may adjudicate matters touching on attorney discipline only when acting as agents of the supreme court upon direct order of that court. (*Ettinger v. Rolewick* (1986), 140 Ill. App. 3d 295, 488 N.E.2d 598; see *In re Zisook* (1981), 88 Ill. 2d 321, 430 N.E.2d 1037, *cert. denied* (1982), 457 U.S. 1134, 73 L. Ed. 2d 1352, 102 S. Ct. 2962.) Attorney disciplinary proceedings are conducted by the ARDC completely separate and apart from the judicial proceedings in which the alleged attorney misconduct occurred. (See 107 Ill. 2d Rules 752, 753, 755; 113 Ill. 2d Rules 751, 754.) A reduction of attorney Vieley's fees imposed solely as a sanction for unprofessional conduct on his part would constitute an impermissible infringement on the exclusive power of the supreme court, acting through the ARDC, to adjudicate attorney disciplinary matters.

■ In support of his argument as to this issue, G. Robert relies on *Talley v. Alton Box Board Co.* (1962), 37 Ill. App. 2d 137, 185 N.E.2d 349. *Talley* was a libel action. The sole issue decided on appeal was whether various statements made in the course of judicial proceedings, which accused an attorney of unprofessional conduct, were absolutely privileged. The court held they were. In the course of its opinion, the court stated:

> "While unethical conduct may not always bar attorney fees, it is hardly accurate to say it cannot affect them, because there are cases where it certainly did. In a New York case, the attorney seeking to recover fees was charged with 'improperly disclosing confidential communications.' The statement was held sufficiently relevant to the issue to be clothed with privilege. *Garr v. Seldon*, 4 NY 91. Another case denied recovery of attorney fees on the ground the attorney's conduct was contrary to the character of the profession. *Ingersoll v. Coal Creek Coal Co.*, 117 Tenn. 263, 98 S.W. 178." (*Talley*, 37 Ill. App. 2d at 145, 185 N.E.2d at 353.)

In view of the exclusive jurisdiction of the supreme court to adjudicate charges of attorney misconduct, the above statement, if of any relevance at all to the determination of the amount of attorney fees, must mean an attorney's alleged unethical conduct is a matter relevant to determining whether the attorney fulfilled his contractual obli-

gations to his or her client.

G. Robert includes in his brief a separate argument to the effect attorney Vieley failed to fulfill his contractual obligations to G. Robert. This argument reads in its entirety:

"5. SHOULD THE TRIAL COURT HAVE CONSIDERED THE FACT THAT ATTORNEY VIELEY FAILED TO FULFILL HIS CONTRACT?

Attorney Vieley was told that naming Attorney Merrick Hayes, et al, was absolutely critical to obtain a semblance of a recovery especially with grossly inadequate discovery.

Attorney Vieley refused to name Attorney Hayes, et al, although the contract was not signed until he agreed it was proper, indicated, and agreed to name him. [Citations to record omitted.]"

It is also apparent an additional source of G. Robert's dissatisfaction with attorney Vieley's services is attorney Vieley's failure to include references to the record in support of his argument contained in the appellant's opening brief filed in the initial appeal in this cause to the effect the circuit court's failure to award G. Robert actual and punitive damages was contrary to the manifest weight of the evidence. This omission resulted in this court holding G. Robert waived this issue for purposes of review. Finally, in his argument premised on attorney Vieley's alleged unprofessional conduct, G. Robert states, "Attorney Vieley also charged me for putting a lien on $50,000 plus mortgage totally unassociated with the case and which he received in error."

Considering the latter contention first, the record reflects no order enforcing a lien for attorney fees arising out of an action concerning a mortgage unrelated to this case. Attorney Vieley's failure to associate with attorney Hayes in his representation of G. Robert in this cause also does not represent a breach of attorney Vieley's contractual duty requiring a reduction in Vieley's fee award. G. Robert does not state why attorney Hayes' participation was essential in order to obtain "a semblance of a recovery," other than to state the discovery was grossly inadequate. He does not, however, point out the manner in which the discovery was so inadequate as to require Vieley to associate with Hayes in his representation of G. Robert. Absent evidence this alleged omission on the part of Vieley prejudiced G. Robert, the circuit court could properly have concluded Vieley's failure to associate with Hayes represented a merely legitimate exercise of Vieley's judgment as to how to best conduct the litigation. An attorney's exercising his or her judgment as to litigation strategy contrary to a cli-

ent's wishes does not in itself amount to the incompetent performance of legal services. (See *People v. Haywood* (1980), 82 Ill. 2d 540, 413 N.E.2d 410.) For these reasons, we cannot say the circuit court clearly erred in refusing to reduce Vieley's fee award on the basis of Vieley's alleged failure to associate with attorney Hayes in his representation of G. Robert in this cause.

■ Attorney Vieley's failure to include citations to the record in the portion of G. Robert's brief filed in the prior appeal of this cause concerning the circuit court's denial of G. Robert's requests for actual and punitive damages does represent a rather serious breach of Vieley's contractual obligations to G. Robert. However, in order for the circuit court to determine the value of attorney Vieley's services in properly presenting G. Robert's other three arguments in the first appeal, it was essential G. Robert present expert testimony, in the form of the opinions of other attorneys, concerning the degree to which Vieley's malfeasance in preparing G. Robert's opening brief reduced the value of Vieley's services in conducting that phase of the litigation. (See *Louisville, New Albany & Chicago Ry. Co. v. Wallace* (1891), 136 Ill. 87, 26 N.E. 493 (where there are no usual and customary charges for legal services, fair and reasonable compensation therefor cannot usually be ascertained other than through opinions of attorneys).) In the absence of such evidence, we cannot say the circuit court clearly erred in awarding attorney Vieley the entire amount of fees which he claimed for the preparation of G. Robert's opening brief in the initial appeal of this cause.

■ We finally consider G. Robert's contention he is entitled to a refund of the $10,000 retainer which he paid attorney Vieley. The circuit court allowed G. Robert a credit for the amount of this retainer toward the amount of attorney fees which it found G. Robert owed Vieley on the basis of the *quantum meruit* theory. Except for the reasons previously discussed, G. Robert does not contend the amount of Vieley's fee award is unreasonable. For this reason alone, we would be justified in holding the circuit court properly refused to award G. Robert a refund of the $10,000 retainer.

Even if the circuit court had not awarded attorney Vieley additional fees on a *quantum meruit* basis, we would nevertheless be compelled to hold G. Robert is not entitled to a refund of the $10,000 retainer. Where there is no ambiguity in the words of a contract, the intent of the parties must be determined solely from the contract's language. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 469 N.E.2d 178; *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.) In this case, the contract between G. Robert and Vieley explic-

itly provides the $10,000 retainer is nonrefundable. The fact the contract provides for additional fees on a contingency basis does not render the contract ambiguous to the extent we may look beyond its plain language to determine its meaning. Nor does the inclusion in a contract for legal services of both a provision for a nonrefundable retainer fee and a provision for additional fees on a contingency basis constitute an obvious injustice. For these reasons, cases such as *Robinson v. Stow* (1864), 39 Ill. 568, and *United States Trust Co. v. Jones* (1953), 414 Ill. 265, 111 N.E.2d 144, on which G. Robert relies are distinguishable from the case at bar. Because we conclude G. Robert is not, as a matter of law, entitled to a refund of the $10,000 retainer which he paid to attorney Vieley, we need not determine whether the circuit court erred when it on April 28, 1987, denied G. Robert leave to file a counterclaim against Vieley requesting a refund of the amount of this retainer.

An attorney initially retained on a contingent fee basis who is discharged without cause is entitled to compensation on a *quantum meruit* basis for services rendered up to the date of his or her discharge. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969.) We perceive no reason why the *quantum meruit* standard should not also apply in situations where an attorney withdraws from representation of a client for good cause.

Judge Dearborn, who presided over this litigation for approximately 4½ years, was in a superior position to determine the results obtained as a result of attorney Vieley's services and the *quantum meruit* value of those services. Judge Dearborn's decision as to these matters was not erroneous.

We have considered all of the authorities cited by G. Robert and have found those which we have not specifically discussed to be of little or no relevance to the issues presented by this appeal.

The judgment of the circuit court is affirmed.

Affirmed.

GREEN, P.J., and LUND, J., concur.