In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-2113

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERICK HALL, also known as CALVIN FRANKLIN,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 CR 134—**Rudolph T. Randa**, *Chief Judge.*

---

ARGUED MARCH 29, 2006—DECIDED JULY 19, 2006

---

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* When Derick Hall phoned the police to report that his girlfriend smashed the windows of his car, he probably did not anticipate a 72-month prison sentence would be the result. Nor did he likely expect to be the one who would be serving that sentence. If Hall had known that his girlfriend had already complained about his retaliatory rampage at her house, maybe he would not have invited the police inside his home when they arrived. And whether Hall reasonably believed he was in custody when he told the police he was a felon and a gun was hidden in his bedroom is a question we need not answer.

## I.  HISTORY

On the morning of February 9, 2004, Officers Steven Strasser and Mario Gutierrez of the Milwaukee Police Department were on patrol when the dispatcher informed them of a complaint from Angela Smith. The dispatcher told them that Hall allegedly smashed Smith's front door, broke her window, and took a gun. The dispatcher also relayed that Hall drove a silver Buick and provided them with the license plate number. The two officers were sent to Hall's address, while a third officer, Matthew Knight, set off to interview Smith at her residence.

While Strasser and Gutierrez were on the way to Hall's house, the dispatcher informed them that Hall had phoned in a complaint about Smith. When the officers arrived at Hall's residence, they saw a silver Buick and ran a check of the license plate number. The license plate was registered to Hall, at his reported address, but the car associated with the license plate was a maroon Buick, not a silver one. Parked across the street was a maroon Buick.

Hall was standing in the doorway of his house. He waved at the officers and identified himself as they approached. Hall said he called in a complaint for the vandalism of his vehicle, referring to the maroon Buick, which did appear to be damaged. While the officers stood at the bottom of the stairs to the front entrance, they asked Hall if they could enter to discuss his complaint. Hall replied, "Sure, come in."

Inside the house, Hall explained that this was his residence and that his girlfriend, Smith, had come over and knocked the windows out of his maroon Buick. Hall said that in response, he went to Smith's house and kicked in a door and broke a window.

The conversation continued in Hall's living room, and Hall invited the officers to sit down. The officers declined and told Hall that Smith had reported he took a gun from

her residence. Hall denied this allegation and stated that, as a convicted felon, he could not legally possess a firearm.

Hall did not ask the officers to leave, nor did the officers advise him he was free to terminate the interview. The officers asked Hall for permission to search the residence. Gutierrez wrote a statement in his log book to the effect, "I give police permission to search the premises." Gutierrez read the statement to Hall, who then read it and signed it. Gutierrez began to search the first floor. Strasser remained with Hall in the living room. Hall was seated, and Strasser stood.

Gutierrez found a locked room and asked Hall about it. Hall replied that it was his bedroom and, without being asked, gave Gutierrez a key to the room. Inside Hall's bedroom, Gutierrez found a box of ammunition and showed it to Strasser and Hall in the living room. Hall lowered his head and said he wanted to cooperate. Then Hall said that a gun was hidden above a ceiling tile in his bedroom. After Gutierrez found a gun in the place where Hall described, Hall was placed under arrest and advised of his *Miranda* rights.

On June 2, 2004, a grand jury returned a one-count indictment charging Hall with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hall filed a motion to suppress both his statements to the officers and the gun they found as a result. Hall argued the evidence was illegally obtained because he was in police custody and was not read his *Miranda* warnings. The matter was referred to a magistrate judge.

The magistrate judge conducted an evidentiary hearing on August 18, 2004. Officer Strasser testified, and the government rested, reserving time for rebuttal should Hall testify. After a break in the proceeding to allow Hall to confer with his attorney, Hall's attorney informed the magistrate judge that Hall would not testify and pro-

ceeded to call Gutierrez and Knight (the officer dispatched to the girlfriend's house) to the stand.

On August 23, the magistrate judge issued her first recommendation that Hall's motion to suppress be denied. The recommendation concluded with the admonition, "Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), whereby written objections to the foregoing recommendation may be filed . . . within ten days of the date of service of this recommendation. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal." Hall did not file with the district judge an objection to the magistrate judge's recommendation.

On September 1, Hall's appointed counsel filed a motion to withdraw as counsel, citing a "breakdown in trust and communications." The district judge granted the motion. On September 8, the grand jury returned a superceding indictment that charged Hall with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1).

Hall's new attorney entered an appearance on September 20, and Hall was arraigned on the superceding indictment shortly thereafter. Before the district judge ruled on the magistrate judge's recommendation, Hall filed with the magistrate judge a motion for rehearing of his motion to suppress. Hall asked to testify, and he also sought to produce the testimony of Alvin Mercado, his upstairs tenant.[1] Hall argued he should be allowed to testify because his previous attorney "failed to advise him of the neces-

---

[1] In a supporting affidavit, Hall asserted he would testify that after the ammunition was found, one of the officers stood in front of Hall and yelled at Hall to divulge the gun's location. Hall also predicted that Mercado would testify that he heard the officers yell at Hall.

sity . . . to testify on his own behalf" and would testify that the police intimidated him so that he did not believe he was free to leave. Hall claimed Mercado had been previously unwilling to testify.

The magistrate judge issued an order on October 18 granting Hall's motion in part and denying it in part. Mercado could testify at a supplemental hearing; Hall could not. The magistrate judge explained that Hall made the affirmative decision not to testify, and that the substitution of counsel was not a sufficient basis to revisit the issue. The order stated, "The evidence presented at the supplemental evidentiary hearing will be considered in determining whether or not the court's recommendation on the motion should be modified or changed."

The supplemental hearing was held on October 27. Mercado testified that he was upstairs when the police searched Hall's residence and that 45 minutes after their arrival, the officers' voices grew louder and took an intimidating tone as they demanded Hall to tell them where the gun was hidden.

On November 9, the magistrate judge again recommended to the district judge that Hall's motion to suppress be denied. At the outset, the magistrate judge stated, "The issue presented by the defendant's motion to suppress statements and to exclude evidence is whether he was 'in custody' at the time he was questioned in his apartment." The magistrate judge determined that Hall was not "in custody" for *Miranda* purposes when he made his incriminating statements to the police during their search of his house. Similar to her first recommendation, the magistrate judge concluded, "Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. . . . Failure to file a timely

objection with the district court shall result in a waiver of your right to appeal."

On December 7, the district judge ruled on the issue. The order noted, "No objections have been filed to this Recommendation. The Court has reviewed the record and rationale for the denial and adopts *in toto* the recommendation of Magistrate Judge Gorence and the rationale supporting it as its own." The court denied Hall's motion to suppress.

Hall's case proceeded to trial, and a jury convicted him on both counts. Hall was sentenced to 72 months' imprisonment and three years of supervised release on each count of the superceding indictment, to run concurrently. Hall appeals the district court's denial of his suppression motion.

## II. ANALYSIS

First, Hall argues he was in police custody, invoking the duty to provide *Miranda* warnings, when he disclosed the location of the gun. Second, Hall claims it was an abuse of discretion to deny his request to testify at the supplemental evidentiary hearing. The government argues we cannot reach the merits of these issues because Hall's failure to object to the magistrate judge's recommendation before the district court amounts to a waiver of his right to appeal these issues.

Waiver only occurs when a defendant intentionally relinquishes a known right, and no less. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (citations and quotations omitted)); *see also United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005) (citations omitted); *United States v. Baretz*, 411 F.3d 867, 875 (7th Cir. 2005) (citation omitted). Unfortunately for

Hall, the failure to object to the recommendations and decisions of a magistrate judge is one instance we have held waiver of appellate review results. *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003) (citation omitted); *United States v. Brown*, 79 F.3d 1499, 1503-04 (7th Cir. 1996) (collecting authority); *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir. 1988) (citation omitted). The purpose of this waiver rule is to promote efficiency between the district and appellate courts, so that district courts have the opportunity to nip errors in the bud without requiring them to conduct plenary reviews of proceedings supervised by magistrate judges. *See Hernandez-Rivas*, 348 F.3d at 598 (citing *Thomas v. Arn*, 474 U.S. 140, 147 (1985)); *Lockert v. Faulkner*, 843 F.2d 1015, 1017-18 (7th Cir. 1988) (holding the rationale of *Thomas* requires waiver to apply to each issue not included in an objection); *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742 (7th Cir. 1999) (sandbagging problem identified in *Thomas* may be cured with adequate notice to the district judge of the contested issues).

Hall concedes he had notice that his *Miranda* claim was subject to waiver but argues he lacked similar notice regarding his claim that he should have been allowed to testify at the supplemental suppression hearing. Our circuit requires "that a party shall be informed by the magistrate that objections must be filed within ten days or further appeal is waived." *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 261 (7th Cir. 1989). Hall points out that in her October 18 order denying Hall's request to testify, the magistrate judge did not mention that waiver would result should he not object. Although the magistrate judge did not include in this particular order an explicit warning of waiver, it does not follow that there was a failure of notice.

The magistrate judge's refusal to allow Hall to testify at the supplemental suppression hearing fell within the ambit of her subsequent recommendation that Hall's

suppression motion be denied. In other words, had Hall objected to this recommendation, one of the grounds he could have raised would have been that the magistrate judge erred in failing to allow Hall to testify. The magistrate judge's second recommendation stated, "written objections *to any recommendation herein or part thereof* may be filed." (emphasis added). This order also cited the applicable legal standards for objecting and warned, "Failure to file a timely objection with the district court shall result in a waiver of [Hall's] right to appeal." Therefore, Hall and his attorney were sufficiently on notice that waiver was at stake should he not object to any issue relating to the denial of his motion to suppress.[2]

Hall presented two issues to the magistrate judge, and they were denied. Hall could have raised both of these objections to the district court, but he did not. Therefore, Hall has waived the only issues he raises on appeal. *See Provident Bank*, 882 F.2d at 262. As a result of Hall's deliberate act, the errors, if any, are extinguished and appellate review is precluded. *Baretz*, 411 F.3d at 875 (citing *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000)). To avoid this outcome, Hall crafts a variety of arguments that his case is the exception.

First, Hall asserts that the interests of judicial efficiency are not served in his case and so the waiver rule need not be enforced. Hall maintains that the purpose of the waiver rule was "mooted" by the district judge's independent review of the magistrate judge's recommendation. But when the district judge reviewed the record, he did so with the understanding that "[n]o objections have been filed

---

[2] We also note it is likely Hall was already on notice in light of the magistrate judge's reference to 18 U.S.C. § 636 in the first order, as well as from General Local Rule 72.3(a). Hall did not object to the first recommendation.

to this Recommendation." Therefore, we need not consider Hall's "objection-by-ratification" argument because it is inapplicable.

Second, Hall asserts his case is particularly compelling because the Government has not identified any prejudice it would endure should we address his claims. This rationale is rooted in the notice the Government received when Hall made these arguments to the magistrate judge. But Hall ignores the other side of the coin: The arguments Hall made to the magistrate judge are conclusive proof of Hall's actual prior knowledge of the claims he now raises on appeal, which sets the stage for waiver to apply. *Cf. United States v. Johnson*, 415 F.3d at 730-31 (holding that not filing a motion to suppress constitutes mere neglectful failure to pursue an argument—not intentional relinquishment—which may be excused if appellant could show cause). Moreover, even if the government is not prejudiced, the efficient administration of justice is.

Third, Hall asserts we should at least exercise plain error review of his issues. Hall refers to the Supreme Court's directive in *Thomas* that default may be excused by a court of appeals "in the interests of justice," 474 U.S. at 155, arguing the exception should be equated with plain error. Hall asserts other circuits have done so, but he does not mention this circuit's precedent, *e.g.*, *United States v. Penny*, 60 F.3d 1257, 1261 (7th Cir. 1995) ("When a right is waived, it is not reviewable, even for plain error.") (citing *Olano*, 507 U.S. at 732-33); *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986) (holding the failure to file objections to a magistrate's report issued pursuant to 28 U.S.C. § 636(b)(1) "waives the right to appeal all issues, both factual and legal") (citations omitted). Nor does Hall explain why our case law should not be binding on him.

In *Hernandez-Rivas*, we considered a similar argument—that the failure of an attorney to object to a magis-

trate judge's decision constitutes ineffective assistance of counsel and that waiver of the issue would "defeat the ends of justice." 348 F.3d at 598-99. We rejected the defendant's argument because under that reasoning, "every appellant's failure to file the procedurally necessary objections would be excused, and a party would never waive his or her right to appeal." *Id.* at 599. "[W]e decline[d] the invitation to construe the exception to be so broad that it swallows the rule." *Id.*

Hall's argument is functionally indistinguishable. Hall seeks to abrogate the waiver rule by arguing that even if there was no objection, we should review magistrate judges' rulings for plain error. But that is the identical standard we use where there was no objection to district judges' rulings. *See United States v. Gibson*, 170 F.3d 673, 677-78 (7th Cir. 1999) (citations omitted); *United States v. Shorter*, 54 F.3d 1248, 1256 (7th Cir. 1995) (citations omitted); *United States v. McKinney*, 954 F.2d 471, 475-76 (7th Cir. 1992). "Absent a requirement that objections be filed in the district court, all issues heard by a magistrate would be the appropriate subject of appellate review." *Hernandez-Rivas*, 348 F.3d at 598 (citing *Thomas*, 474   U.S. at 147). Hall's proposed standard would resoundingly defeat the purpose of the waiver rule by placing magistrate judges and district judges on the same footing. In addition, a defendant who simply forfeits—rather than waives— an issue is entitled to plain error review. *United States v. Moore*, 425 F.3d 1061, 1069 (7th Cir. 2005). Hall's position does not recognize that there is, and must be, a difference between the consequences of waiver and forfeiture.

Whatever "in the interests of justice" means, it does not require plain error review in *all* instances in which a defendant does not object to a magistrate judge's recommendation. *See United States v. Franklin*, 197 F.3d 266, 270 (7th Cir. 1999) ("We may refuse to review motions appealed [when the defendant had an opportunity to renew a motion

and chooses not to] because they encourage parties to cache unanswered motions and, by so doing, disrupt the efficient function of the judicial process."). Nor is there a compelling reason not to apply the waiver rule in Hall's case.

### III.  CONCLUSION

For the foregoing reasons, Hall's convictions are AFFIRMED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*