**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 3, 2010[*]
Decided August 3, 2010

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-4070

| | |
|---|---|
| ANIL GOYAL, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | 05 C 5069 |
| GAS TECHNOLOGY INSTITUTE, | |
| *Defendant-Appellee*. | Rebecca R. Pallmeyer, |
| | *Judge*. |

**O R D E R**

Anil Goyal appeals the district court's order enforcing an attorney's lien in favor of Childress Duffy Goldblatt, Ltd. ("CDG"). CDG had represented Goyal in a suit against his former employer, Gas Technology Institute ("GTI") before it withdrew, purportedly because of Goyal's recalcitrance in negotiating a settlement. Shortly after CDG's withdrawal, Goyal settled with GTI. CDG moved to enforce an attorney's lien for the

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

reasonable value of its services, and the district court granted the motion.  We affirm in part and vacate and remand in part.

## I.

In September 2005 Goyal sued GTI under the False Claims Act, 31 U.S.C. § 3730(h), and Illinois common law, alleging that he was fired in retaliation for reporting a fraud committed by his superiors.  In March 2006 Goyal retained CDG to represent him.  In the retainer agreement, CDG agreed to represent Goyal on a contingency fee basis, with Goyal to pay CDG 25% of any amounts recovered, through settlement or otherwise, plus costs.  As relevant here, that agreement instructed Goyal that "[o]ne of your most important obligations under this contract is not to unreasonably withhold your consent to a settlement."  If, by his conduct, CDG were required to withdraw, the agreement further provided that CDG would be reimbursed for attorneys' fees and costs and granted a lien on the case in that amount:

> Should it become necessary for us to withdraw as a result of your conduct, you agree to reimburse all expenses and costs we have advanced or obligated our firm to pay on your behalf, and to pay for the reasonable value of our legal services up to the time of the withdrawal, and you hearby grant us a lien on your case in that amount.

The case was initially handled by CDG attorneys Roy Brandys and Ryan Haas, but after both men left the firm, Christopher Mammel and Victor Jacobellis were assigned to the case.

In December 2007, after nearly two years of discovery, GTI moved for summary judgment and the parties began their first round of settlement negotiations.  In preparation, Mammel sent Goyal an e-mail outlining his estimates as to Goyal's possible recovery were the case to proceed to trial.  Mammel estimated that under the worst-case scenario, Goyal would be awarded nothing and found liable on GTI's counterclaim; under the "most likely" scenario, he would be awarded approximately $2.25 million or more; and under the "best case" scenario, he would receive $4.14 million or more.  Mammel further explained that the best-case scenario was "not likely" and that the uncertainty of the most likely scenario was "still troubling."  Mammel recommended that Goyal offer to settle for $1 million, noting that the likelihood that Goyal would net $2 million was "very low."  Goyal immediately rejected this amount, responding that he wanted to net $2.25 million after attorneys' fees.  Mammel objected to Goyal's approach, stating, "I do not believe the financial results you hope to achieve are reasonable under the circumstances of this case."  Nevertheless, Mammel sent GTI a demand letter for $4 million.

At the parties' first settlement conference in March 2008, GTI responded with an offer of $91,000.  The magistrate judge at one point addressed the possible outcomes at trial, and noted that a jury in a best-case whistleblower action could award as much as $10 million, though such an award was unlikely and could be remitted by the court.  Goyal rejected GTI's offer.

In September 2008 the district judge denied GTI's motion for summary judgment, and discussions grew more strained between Goyal and Mammel regarding settlement. Goyal informed Mammel that, based on the summary judgment outcome and a recent favorable deposition, he wished to increase his demand.  Mammel tried to dissuade Goyal from such a stance, stating that his initial demand of $4 million was more than double his actual damages.  Believing that Goyal's settlement expectations were unreasonable, Mammel offered to modify CDG's retainer agreement—reducing CDG's attorneys' fees to $250,000—if Goyal reduced his settlement demand to $2.6 million.  Goyal rejected the proposal, in part because CDG would not agree to modify his liability for attorneys' fees if CDG withdrew.  Instead he instructed Mammel to demand $4.6 million, noting that this figure was "still less than 50% of what the Magistrate Judge stated that I could potentially get."  Mammel responded that Goyal's increased demand was unreasonable, and advised that "given the circumstances and risks of this case that exist, it is unreasonable to fail to make a good faith effort to settle."

One week later Goyal e-mailed Mammel, instructing him to relay immediately a new settlement demand of $5.5 million.  Mammel initially balked, responding that the proposed amount did not reflect the merits of his claims and represented an "extortion value."  Goyal met with Mammel the next day, and the two discussed the possibility of CDG's withdrawal. Goyal justified his increased amount, stating that his initial proposal of $4.6 million had not included possible punitive damages or lost royalty income.  Mammel sent GTI a $5.5 million settlement demand, to which GTI counteroffered $750,000.

At a second settlement conference in December 2008, the magistrate judge recommended a $1.6 million settlement amount, which both parties rejected.  The next day, GTI offered Goyal $1 million.  Mammel suggested that Goyal make a counteroffer, and Goyal reiterated that he wanted $3 million "in my pocket."

Goyal and Mammel attempted to discuss a possible counteroffer, but their communications continued to deteriorate.  Mammel informed Goyal that he could not recommend a settlement counteroffer because Goyal was no longer consulting with him about his settlement strategy or goals.  Goyal accused Mammel of simply wanting to "get out of trial" and complained that Mammel's handling of the case was deficient and had

weakened his bargaining position. On December 15, 2008, Mammel moved to withdraw. The district judge granted his request.

In April 2009 Goyal and GTI reached a tentative settlement agreement for $1.3 million. CDG then notified Goyal that it claimed an attorney's lien against any settlement. Goyal and GTI jointly moved to quash CDG's lien. The district judge denied the motion, determining that the language of CDG's retainer agreement with Goyal gave rise to an equitable attorney's lien under Illinois law.

CDG moved to enforce the lien, arguing that its withdrawal had been justified because Goyal had unreasonably refused to settle. Under the terms of the retainer agreement, CDG contended that Goyal owed it the full 25% of the settlement amount or the reasonable value of its services. The district judge referred the matter to the magistrate judge, who granted the motion on the basis that CDG was entitled to the reasonable value of its services worth $215,550. Under Illinois law, the magistrate judge explained, an attorney is entitled to reasonable compensation on a *quantum meruit* basis for services provided before his justifiable withdrawal. Citing *Kannewurf v. Johns*, 632 N.E.2d 711, 714 (Ill. App. Ct. 1994), the magistrate judge noted that an attorney's withdrawal from a contingent fee case is justified if a client unreasonably refuses to negotiate toward settlement, causing a "complete breakdown" in the attorney-client relationship. The magistrate judge found that Goyal had ignored CDG's advice and that a simple review of Goyal's escalating settlement demands suggested unreasonableness. Goyal, the magistrate judge added, also misconstrued his comment that a jury "could award $10 million," as his statement was only "meant to emphasize the dramatic gamble parties take when they try a case to a jury." Finally, the magistrate judge concluded, Goyal's complaints that CDG had mismanaged the case were irrelevant and unfounded. In December 2009 the district judge adopted the magistrate judge's order in full.

## II.

Before discussing the merits of Goyal's appeal, we first address three threshold arguments posed by CDG. First, CDG argues that we lack jurisdiction because Goyal appeals not a final decision of the district court but an order of the magistrate judge, and the parties never consented to a magistrate judge presiding over the case. *See* 28 U.S.C. § 636(c). However, the final judgment in this case was entered not by the magistrate judge, but by the district judge in her December 2009 order. When a party proceeds pro se, as Goyal does here, we liberally construe his filings to find the requirements of a notice of appeal satisfied, *Smith v. Barry*, 502 U.S. 244, 248 (1992); *Smith v. Grams*, 565 F.3d 1037, 1041-42 (7th Cir. 2009). Because Goyal specified in his notice that he was appealing "from an order granting the equitable lien," we find no jurisdictional defect.

CDG next argues that Goyal waived any challenge to the magistrate judge's enforcement order because he did not file an objection to it as required under Federal Rule of Civil Procedure 72(b). CDG is correct that Goyal did not object to the magistrate judge's order, and we would normally conclude that such an omission waives the right to appeal. *See United States v. Hall*, 462 F.3d 684, 688-89 (7th Cir. 2006)*; United States v. Brown*, 79 F.3d 1499, 1503-04 (7th Cir. 1996); *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986). But the magistrate judge's order did not warn Goyal of the consequences of failing to object, and thus we cannot treat his right to appeal as waived. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 261 (7th Cir. 1989); *United States v. Young*, 585 F.3d 199, 201 (5th Cir. 2009)*; see also Hall*, 462 F.3d at 688-89; *Brown*, 79 F.3d at 1505; *Ross v. United States*, 910 F.2d 1422, 1432 (7th Cir. 1990).

Third, CDG contends that Goyal's appeal must be dismissed for a failure to meet the requirements for an appellate brief under Federal Rule of Appellate Procedure 28(a)(9). We disagree; Goyal's pro se brief provides much more than a "generalized assertion of error." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). As required by Rule 28(a)(9), Goyal's brief takes issue with the magistrate judge's findings on several issues and contains citations to the record and cases as support for his contentions. *See* FED. R. APP. P. 28(a)(9)*; Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002).

We turn next to Goyal's arguments. He contends first that the magistrate judge clearly erred in finding that he unreasonably refused to settle, thereby justifying CDG's withdrawal. *See* FED. R. CIV. P. 52(a); *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)*; Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806 (7th Cir. 1995). He asserts that the magistrate judge failed to consider his settlement demands within the context of CDG's estimate that a jury award of $2.25 million was "most likely" and ignored evidence of Mammel's purported missteps, which he believes weakened his ultimate bargaining position. Based upon our review of the record, we cannot conclude that the magistrate judge clearly erred in finding that Goyal's actions justified CDG's withdrawal. An attorney is entitled to compensation, "if his sole reason for withdrawing is because his clients do not want to negotiate a case in the manner he thinks best," causing a "complete breakdown" in the attorney-client relationship. *Kannewurf*, 632 N.E.2d at 714-16. First, the magistrate judge adequately considered Goyal's complaints about the quality of Mammel's representation but deemed those assertions unfounded, given Mammel's success in fending off GTI's motion for summary judgment and obtaining increased settlement offers from the company. Furthermore, as the magistrate judge noted, Goyal repeatedly spurned Mammel's suggested demand proposals, which had the effect of fracturing the attorney-client relationship, making it unreasonably difficult for CDG to carry out its representation. *See McGill v. Garza*, 881 N.E.2d 419, 422 (Ill. App. Ct. 2007); *Kannewurf*, 632 N.E.2d at 714-16; *Leoris & Cohen, P.C. v. McNiece*, 589 N.E.2d 1060, 1064-65 (Ill. App. Ct. 1992); *Reed Yates*

*Farms, Inc. v. Yates*, 526 N.E.2d 1115, 1124-25 (Ill. App. Ct. 1988). Goyal tries to distinguish his case from *Kannewurf* on grounds that his likelihood of winning at trial was substantially higher and that he did not refuse to participate in negotiations. But Goyal misses *Kannewurf*'s broader holding, which is that an attorney may withdraw from a contingent fee case and seek reasonable compensation for his services when a client's actions in rejecting his attorney's professional judgment result in a complete breakdown of the attorney-client relationship. *See Kannewurf*, 632 N.E.2d at 716; *Leoris & Cohen, P.C.*, 589 N.E.2d at 1064-65; *Reed Yates Farms, Inc.*, 526 N.E.2d at 1124-25.

Goyal also challenges the magistrate judge's calculation of the reasonable attorney's fees due. Goyal contends that the magistrate judge abused his discretion by accepting CDG's inflated hourly billing rate for attorney Victor Jacobellis. Even though CDG invoiced Jacobellis's hourly rate at $300, it had billed an insurance company for Jacobellis's work in a related case at only $225. The fees for Jacobellis's services were substantial, given that he had billed 138 hours to Goyal's case.

The magistrate judge erroneously relied on the parties' retainer agreement to support Jacobellis's increased rate. In his order, the magistrate judge broadly stated that the attorneys' billing rates were consistent with the rates mentioned in the retainer agreement. But as Goyal notes, the retainer agreement did not include an hourly rate for Jacobellis, and thus the magistrate judge's reasoning is contrary to the record evidence and was an abuse of discretion. *See id.* at 716; *see also Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). We therefore remand the case to the district court to consider the reasonable hourly rate for Jacobellis in the first instance.

Finally, Goyal also contends that the final invoice provided by CDG included a number of charges for work unrelated to this case. But Goyal raised this argument for the first time in his reply brief, and thus we will not consider it. *See Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009).

Accordingly, we AFFIRM the judgment of the district court with regard to the enforcement of CDG's attorneys' lien and VACATE and REMAND for consideration of the reasonable value of Jacobellis's services.