MIDDLEBROOKS, District Judge,
dissenting:
A lawyer is a fiduciary, entrusted to handle a client’s affairs with competence, diligence, and loyalty. In the face of looming discovery deadlines, and with virtually no discovery completed, lawyer Alicia Haynes emailed her client: “I have decided the best course of action is to withdraw from your case effective immediately.... Your file has been boxed and is in the lobby with the receptionist.” Instead of seeking permission from the court to withdraw or taking steps to protect the interests of her client, Ms. Haynes gave a “heads up” to opposing counsel notifying him of her withdrawal. The opposing party promptly filed an Offer of Judgment, exposing the client to costs if not accepted within fourteen days. Only after a notice of acceptance was filed through other counsel was permission to withdraw sought.
I agree with the majority that the case should be remanded for entry of judgment nunc pro tunc as of April 26, 2012. However, I cannot join the majority opinion affirming an award of attorney’s fees for two reasons:
(1) Under Federal Rule of Civil Procedure 68, upon the filing of the written notice accepting the offer, judgment should have been immediately entered by the clerk. The ancillary decision awarding *815 fees is “beyond the pale of existing jurisdiction, and thus must be a nullity.” Broughten v. Voss, 634 F.2d 880, 883 (5th Cir.1981).[1]
(2) Counsel’s unilateral and precipitous withdrawal without consultation with the client or permission from the tribunal constituted abandonment of the suit and precludes compensation. Not only did counsel terminate representation before obtaining permission from the trial judge, but also the trial judge employed an erroneous standard, first in granting the tardy motion to withdraw and then in finding justification sufficient to warrant compensation.
For these reasons, as discussed in detail below, I respectfully dissent.
I.
In remanding this case so that the district court can enter judgment nunc pro tunc as of April 26, 2012, the majority recognizes that pursuant to Federal Rule of Civil Procedure 68, judgment should have been entered by the clerk immediately upon filing of the notice accepting the offer of judgment.[2] A Rule 68 offer of judgment and acceptance is self-executing. See Perkins v. U.S. W. Commc’ns, 138 F.3d 336, 338 (8th Cir.1998) (“Rule 68 leaves no discretion in the district court to do anything other than enter judgment once an offer of judgment has been accepted.”); Mallory v. Eyrich, 922 F.2d 1273, 1279 (6th Cir.1991) (“By directing that the clerk shall enter judgment after proof of offer and acceptance have been filed, the explicit language of the rule signifies that the district court possesses no discretion to alter or modify the parties’ agreement.”). The district court’s jurisdiction under 18 U.S.C. § 1331, which was based upon Title VII of the Civil Rights Act of 1964, was therefore at an end and any relief from judgment could only have been sought pursuant to Federal Rule of Civil Procedure 60. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The district court lacked jurisdiction to decide the subsequently filed motion to withdraw and notice of lien.[3]
Under circumstances even less clear than those presented here, our predecessor circuit has held that a district court lacked ancillary jurisdiction to resolve a fee dispute between a party and withdrawing counsel. See Broughten, 634 F.2d at 882-83. Jurisdiction there involved the federal securities laws and, during the course of the litigation, the plaintiff fell behind on payments to counsel and the law firm moved to withdraw. Id. at 881. The trial judge required the plaintiff to show cause why counsel should not be allowed to withdraw. Id. The plaintiff' responded that the law firm had used improper billing methods, the firm had agreed to go for *816 ward if she made payment of a certain amount (which had been paid), and her lawsuit would be prejudiced if the firm were allowed to withdraw. Id. After a hearing, the trial judge allowed the law firm to withdraw but ordered that it was not entitled to any further fee. Id.
Writing for the Fifth Circuit, Judge Tjoflat found that the fee decision was outside of the court’s jurisdiction and therefore a nullity. Id. at 883. In doing so, he saw a distinction in the trial court’s role in cases where a client sought to discharge and substitute counsel and those where a lawyer seeks to withdraw voluntarily from representation. Id. at 882-83. Where a client seeks to change counsel during the pendency of a case, Judge Tjoflat found the law “well settled” that a district court could condition substitution on the payment of fees or the posting of security. Id. at 882 (quoting Nat’l Equip. Rental, Ltd. v. Mercury Typesetting Co., 323 F.2d 784, 786 (2d Cir.1963)). However, where a lawyer seeks to withdraw voluntarily, the trial judge’s responsibility is “to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal of counsel is for good cause.” Id. at 882-83. “This by itself is adequate to protect the interests of the parties before the court and assure fair treatment of the court’s officers.” Id. at 883.
Here, upon the filing of the acceptance of the offer of judgment, the case was over. There was no risk of disruption of the court’s schedule and any risk of harm to the client caused by the sudden and voluntary withdrawal that had already occurred. The issue of any attorney fee that might be owed, together with any claim for malpractice based upon the actions of counsel, was within the jurisdiction of the state courts and beyond the subject matter jurisdiction of the district court.
II.
In reviewing decisions involving conduct of lawyers, this Circuit applies the “clearly erroneous” test while carefully examining the district court’s application of relevant ethical standards. Brennan’s, Inc. v. Brennan’s Restaurants, Inc., 590 F.2d 168, 171 (5th Cir.1979) (citing Woods v. Covington Cnty. Bank, 537 F.2d 804, 810 (5th Cir.1976)). “District courts enjoy no particular functional advantage over appellate courts in their formulation and application of ethical norms.” Woods, 537 F.2d at 810.
Assuming the district court had subject matter jurisdiction, the fundamental issue in this appeal is whether the law firm appropriately and with just cause withdrew from representing its client. Any award of fees depends upon the answer to this question. If counsel abandoned the representation without just cause, under Alabama law, fees are precluded. Howard v. McCarson, 215 Ala. 251, 110 So. 296, 297 (1926); Amason v. Harton, 205 Ala. 681, 89 So. 37, 37 (1921); Troy v. Hall & Farley, 157 Ala. 592, 47 So. 1035, 1036 (1908).
A. Background
In March 2012, the case had been pending for thirteen months.[4] Plaintiffs coun *817 sel had filed five motions for extension of deadlines. In February 2012, the trial judge indicated that no further extensions would be granted absent good cause, and plaintiffs subsequent motion (filed 2/24/12) had been denied except with respect to expert reports. No depositions had been taken; no dispositive motions had been filed; no expert reports had been exchanged.
On Friday, March 9, 2012, Ms. Lewis (the client) emailed Ms. Haynes’ associate, Ms. Cleveland: “[Haynes] rarely communicates with me, which makes you my contact on outstanding issues. It’s unacceptable for you to be uninformed on these things. Has there been no progress as to Becky, the expert, or depo prep dates? ... Just as there was no progress on the [motion] to compel for 2 weeks and until I emailed to find out the discovery status. If no one tells me what’s going on, I assume there has been no progress ... all while time is passing.” Evidentiary Hearing Notebook, at Tab 34.[5]
On Monday March 12, 2012, Ms. Haynes responded:
Based on your recent email message on Friday it appears you have no confidence in the manner I am litigating your case. The tone of your email was also very derogatory, accusatory, and demanding of me and my staff. As such I have decided the best course of action is *818 to withdraw from your case effective immediately and for you to seek new counsel.... I have drafted and filed a reply to the defendant’s response in opposition to the motion to compel that we filed on your behalf. We will take no further action on your behalf.... Your file has been boxed and is in the lobby with the receptionist. You may pick this up at your convenience.... We wish you the best of luck in this endeavor.
Evidentiary Hearing Notebook, at Tab 35.
On March 16, 2012, Ms. Haynes followed up her email with a certified letter to her client:
This will confirm our conversation of March 12, 2012, where I informed you I am withdrawing from your case effective immediately.
I drafted and filed a reply to the defendant’s response in opposition to the motion to compel that we filed on your behalf. We will take no further action on your behalf unless court filings require immediate attention. I will officially withdraw with the court from your case on April 2, 2012. Please let me know if you need assistance finding counsel.
I have also enclosed a copy of the current docket sheet in this matter for your review in regard to deadlines and the status of pending motions.
Your file has been boxed and is in the lobby with the receptionist. You may pick this up at your convenience.
Evidentiary Hearing Notebook, at Tab 36. Ms. Haynes did not file a motion to withdraw on April 2, 2012, as promised. On April 9, 2012, she emailed her client:
Laura Ellen, Have you had a chance to locate other representation? I have not had anyone contact me about your client file nor have you picked up your file. I am planning on withdrawing with the court today and your other counsel should be apprised so they can file a notice of appearance. Thanks, Alicia.
Evidentiary Hearing Notebook, at Tab 40.
Then, in what she described as a “heads up,” Ms. Haynes told her opposing counsel, “I [will] be withdrawing from the file.” Evidentiary Hearing Tr. at 10. Opposing counsel quickly responded with an offer of judgment under Rule 68.[6] On April 26, 2012, new counsel appeared for Ms. Lewis. That same day, Ms. Lewis accepted the offer of judgment and then Ms. Haynes sought court approval to withdraw as counsel.
B. “Your file has been boxed and is in the lobby with the receptionist ”
This Court has said that before granting a motion to withdraw, “it is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel and that the withdrawal of counsel is for good cause.” Mekdeci v. Merrell Nat’l Labs., 711 F.2d 1510, 1521-22 (11th Cir.1983) (quoting Broughten, 634 F.2d at 882-83). Under standards employed by the federal courts, withdrawal should be denied where the client’s rights will be prejudiced by the delay caused by replacing counsel and where the trial calendar of the court will be dislocated so as to impede the interest of justice. Id. at 1522 n. 17.
In evaluating conduct of lawyers, this Court has looked to the Code of Professional Responsibility, ABA Canons, Ethical Considerations and Disciplinary Rules, Local Rules, and state case law. See id.; *819 Woods, 537 F.2d at 810.[7] Recently, in deciding whether lawyers effectively abandoned their client in an Alabama death penalty case, the Supreme Court relied in part on the Restatement (Third) of Law Governing Lawyers (1998). See Maples v. Thomas, — U.S. —, 132 S.Ct. 912, 922-23, 181 L.Ed.2d 807 (2012) (citing 1 Restatement (Third) of Law Governing Lawyers § 31 cmt. f (1998)).
Local Rule 83.1(e) of the United States District Court for the Northern District of Alabama prohibits the withdrawal of counsel without the court’s approval and states: “attorneys shall be held at all times to represent the parties for whom they appear of record ... until, after formal motion and notice to such parties and to opposing counsel, they are permitted by order of court to withdraw from such representation.” N.D. Ala. L.R. 83.1(e); see also ABA Model Code of Professional Responsibility, DR 2-110(A)(l) (1980) (lawyer may not withdraw without permission when tribunal rules so provide); Restatement (Third) of Law Governing Lawyers § 31(1) (2000) (“[a] lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation”); Id. § 31 cmt. c (“the lawyer should ordinarily continue to act for the client until the tribunal has approved withdrawal”; “A lawyer seeking leave of a tribunal to withdraw should avoid disclosure of confidential client information to the extent feasible.”).
Ms. Haynes’ communication to her client that she was withdrawing from representation “effective immediately” and that “your file has been boxed and is in the lobby with the receptionist” was a blatant violation of the rules of court and the laws governing counsel. In failing to timely file a motion to withdraw, she denied the trial judge the opportunity to exercise his responsibility to determine whether withdrawal so late in the litigation would prejudice Ms. Haynes’ client or, alternatively, to extend the deadlines to allow the client to obtain new counsel. In ceasing representation yet failing to seek permission from the court, the client was placed in limbo. This effectively left the client stranded at a very vulnerable time in the litigation. Then, inexplicably, Ms. Haynes made it worse by giving opposing counsel a “heads up” advising of her client’s precarious and defenseless posture.
In this vulnerable position, opposing counsel presented a Rule 68 offer of judgment. According to the Supreme Court, application of Rule 68 requires plaintiffs to “think very hard” about whether continued litigation is worthwhile. Marek v. Chesny, 473 U.S. 1, 11, 105 S.Ct. 3012, 3017, 87 L.Ed.2d 1 (1985). This Court has explained that Rule 68 operates with a two-part approach as follows: ■
First, Rule 68 allows a defendant to make a firm, non-negotiable offer of judgment. Unlike traditional settlement negotiations, in which a plaintiff may seek clarification or make a counteroffer, a plaintiff faced with a Rule 68 offer may only accept or refuse. If he accepts, the court automatically enters judgment in his favor; if he refuses, the case proceeds. Second, the Rule encourages plaintiffs to accept reasonable offers through what is referred to as its “cost-shifting” provision, which forces a plaintiff who refuses an offer and then ultimately recovers less at trial than the offer amount to pay the costs incurred from the time of the offer.
*820 Util. Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc., 298 F.3d 1238, 1240-41 (11th Cir.2002).[8]
Ms. Haynes breached her duty to her client in curtailing representation and then waiting until the offer of judgment was made and accepted to seek approval to withdraw from the court. It is hard to imagine a more total abandonment of a client’s cause. Based on counsel’s failure to withdraw and her abandonment of her client, any request for fees should have been denied.
C. The District Court Failed to Apply the Correct Legal Standard
It is unclear what standard the district court employed in considering whether Ms. Haynes was entitled to fees. The court expressly said it was adopting the standard announced by the Fifth Circuit in Augustson v. Linea Aerea Nacional-Chile S.A., 76 F.3d 658 (5th Cir.1996), applying Texas law.[9] See Order at p. 14. Under the rule set forth in Augustson, “an attorney [who], without just cause, abandons his client before the proceeding for which he was retained has been conducted to its termination, or if such attorney commits a material breach of his contract of employment, he thereby forfeits all right to compensation.” Augustson, 76 F.3d at 662 (quotations omitted). Whether “just cause” exists will depend on the facts of each particular case, and “[gjenerally, just cause exists when the client has engaged in culpable conduct.” Id. at 663 (citations omitted).[10]
As the Fifth Circuit pointed out, “[t]he objectives of a hearing on cause to withdraw differ from the objectives of a hearing on attorney’s fees, and because of these differences circumstances can arise that would authorize a trial court to permit counsel to withdraw but retain no fee.” Id. at 664. “When considering a motion to withdraw, a trial court is given broad discretion in order to protect the best interests of the client.” Id. That is similar to the standard employed in this Circuit: withdrawal should be denied where the client’s rights will be prejudiced or where the court’s calendar will be disrupted. See Mekdeci, 711 F.2d at 1521-22; Broughten, 634 F.2d at 882-83. “In such a setting, the court generally focuses on the presence of circumstances harmful to the attorney-client relationship, and inquiry into the cause of these circumstances is irrelevant. At a lien hearing, however, the focus of attention is on the cause of attorney-client problems.” Augustson, 76 F.3d at 664.
In Augustson, as here, withdrawing counsel had taken no depositions and retained no expert witnesses to testify at *821 trial. Id. at 661. The trial judge found that the clients had either lost faith or never had faith in the lawyer’s ability sufficient to trust the firm’s judgment. Id. at 662.[11] Nevertheless, the Fifth Circuit held that, at least where a lawyer could continue without violating ethical obligations, cause to withdraw under Texas Disciplinary Rule of Professional Conduct 1.15(b) did not necessarily establish cause to recover compensation. Id. at 664. The Augustson court found that counsel had no justification or cause to withdraw that would preserve an entitlement to compensation:
A contrary rule would also encourage attorneys to withdraw from “bad” cases on the grounds that the client uncooperatively insists on going to trial, allowing the attorney to avoid the risks of representation without losing the benefits of an eventual recovery. It is in such “bad” cases that a client will have the most trouble finding another attorney, and the existence of an attorney’s lien will make the search all the more difficult.
Id.[12]
In the instant case, the district court failed to consider the cause of the attorney-client problems and reached a result inconsistent with Augustson. Instead, the district court relied almost entirely on the state of the attorney-client relationship at the time of withdrawal. The court, citing an unpublished decision from the Seventh Circuit, found there to be “sufficient cause” for an attorney to terminate the attorney-client relationship because “Lewis no longer trusted or accepted the professional decisions of Haynes and the Firm.” See Goyal v. Gas Tech. Institute, 389 Fed.Appx. 539, 544 (7th Cir.2010) (citing an Illinois state court holding which provides “an attorney may withdraw from a contingent fee case and seek reasonable compensation for his services when a client’s actions in rejecting his attorney’s professional judgment result in a complete breakdown of the attorney-client relationship”).[13] Further, the district court found *822 “sufficient evidence supporting Haynes and the Firm’s entitlement to just compensation for services rendered,” and then found “no evidence that Haynes or the Firm acted outside of the professional norms for zealously pursuing Lewis’ interests in the underlying matter.”
Other cases cited by the district court are inconsistent with its decision. For example, the district court cited a Missouri Supreme Court decision, where the court reversed an award of attorney’s fees with a remand for specific findings. See Int'l Materials Corp. v. Sun Corp., Inc., 824 S.W.2d 890 (Mo.1992). There, examples of the type of client conduct that could justify withdrawal preserving entitlement to compensation included perjury by the client; a client accusing the attorney of dishonesty; a client’s refusal to communicate; or a total breakdown in communication between the attorney and client caused by the client. Id. at 894. The district court also looked to a Montana case, but there the Montana Supreme Court also reversed an award of attorney’s fees, concluding good cause did not exist for withdrawal. See Bell & Marra, PLLC v. Sullivan, 300 Mont. 530, 6 P.3d 965, 971-72 (2000) (financial concerns of the attorneys was not good cause to withdraw justifying compensation).
Just cause that can preserve entitlement to compensation as defined in the decisions listed above — and by most other jurisdictions that have considered the issue — requires egregious, intentional client conduct that frustrates the ability of a lawyer to complete representation. See, e.g., Faro v. Romani, 641 So.2d 69 (Fla.1994) (the existence of grounds for withdrawal does not translate into an attorney’s right to be paid for work performed unless client’s conduct makes continued performance impossible or would cause the attorney to violate an ethical rule);[14] Staples v. McKnight, 763 S.W.2d 914 (Tex.App.1988) (attorney’s withdrawal because she thought client intended to present perjured testimony not sufficient justification to warrant compensation where actual falsity of testimony was not established); Hobart v. Decker, 188 Cal.App.3d 1004, 1014, 233 Cal.Rptr. 807 (1987) (“While a personality clash between the parties may provide good reason for allowing the attorney to withdraw, it is not necessarily a justifiable reason for purposes of awarding fees.”). If a single email sent by a client questioning the handling of her case and expressing discontent about repeated delay constitutes just cause, the standard becomes meaningless. Demanding clients are not unusual. If just cause can be applied in this manner, it simply becomes a license to walk away from what a lawyer might think is a bad case.
The district court appears to have simply determined whether Ms. Haynes should have been permitted to permissively withdraw. Section 32 of the Restatement (Third) of the Law Governing Lawyers describes the circumstances where a lawyer can voluntarily withdraw from representation. The rationale for lawyer withdrawal rules is that, except in limited circumstances, a lawyer must persist despite unforeseen difficulties and carry through the representation for its intended conclusion. Id. § 32 cmt. c. “A lawyer who withdraws, or tries to withdraw, other than as allowed by this Section is subject to professional discipline and breaches a duty to the client.” Id. § 32 cmt. a (internal citations omitted).
*823 The portion of Section 32 pertinent in this case is (3)(h), which provides: “a lawyer may withdraw from representing a client if ... the representation has been rendered unreasonably difficult by the client or by the irreparable breakdown of the client-lawyer relationship.” Id. § 32(3)(h). Withdrawal under this subsection is subject to Subsections (4) and (5). Subsection (4) states that “a lawyer may not withdraw if the harm that withdrawal would cause significantly exceeds the harm to the lawyer or others in not withdrawing.” Id. § 32(4). Subsection (5) provides that “a lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation.” Id. § 32(5).
“Before withdrawing a lawyer must seek to protect the interests of the client by communicating, if feasible, with the client concerning the basis for withdrawal and requesting any corrective action that the client might be able to take.” Id. § 32 cmt. h(i) (internal citation omitted). Further, Comment n to Section 32 provides:
a lawyer may be required to consult with a client when a lawyer is considering permissive withdrawal under § 32(3). For example, a lawyer may receive an instruction of the client that the lawyer considers to render the representation unreasonably difficult (see § 32(3)(h)).... The lawyer must consult with the client about the instruction, if withdrawal can be accomplished only with material adverse effect on the client (compare § 32(3)(a)) and if it reasonably appears that reconsideration or other action by the client could, within a reasonable time, remove the basis for the withdrawal.
Id. § 32 cmt. n.
“Whether material adverse effect results is a question of fact. The client might have to expend time and expense searching for another lawyer. The successor lawyer might have to be paid what in effect are duplicated fees for becoming familiar with the matter.” Id. § 32 cmt. h(ii). “In considering permissive withdrawal (Subsection (3)), a lawyer should take into account whether the tribunal may refuse permission. The tribunal may do so, for example, because of adverse effect on the court’s docket.” Id. § 32 cmt. d.
In reviewing whether Ms. Haynes’ withdrawal would have a material adverse effect on her client, I turn to the timing of Ms. Haynes’ withdrawal. Counsel’s withdrawal came at the end of discovery, when the district court had already warned that no further extensions would be granted. Consider the predicament facing Ms. Haynes’ client as she sought new counsel. Before undertaking representation, a lawyer would have to assess whether it would be possible to complete discovery, find and retain an expert and file an expert report, deal with the expected dispositive motion, and prepare for trial in the limited time remaining. Would the trial judge agree to yet another extension of the deadlines? With time ticking on the offer of judgment, a prospective lawyer would also have to consider whether it would be possible to give the client informed advice and if the offer was refused: ‘Will I be paid for my work?” The record demonstrates that Ms. Haynes’ withdrawal would have had a material adverse effect on her client, suggesting withdrawal should not have been permitted.
The district court failed to apply the rigorous “just cause” standard sufficient to preserve an entitlement to compensation as described in Augustson and followed in the majority of jurisdictions. Instead, it seems to have simply determined (on an after-the-fact basis) whether there was sufficient cause to allow counsel to permissively withdraw. Even under that relaxed *824 standard, there was no consideration of the material adverse effect suffered by the client.
III.
In sum, judgment should have been entered on April 26, 2012, and the district court lacked jurisdiction to decide the attorney fee dispute. Moreover, Ms. Haynes failed to seek permission to withdraw from the district court as required by the local rules, the Code of Professional Conduct, and decisions of this Court. She failed to consult with her client before terminating the representation, made no showing that she considered whether her client would suffer materially adverse effects by reason of her late termination, and harmed her client by notifying opposing counsel of her intention to withdraw. The trial judge applied an uncertain standard and erroneously awarded compensation to a lawyer who abandoned her client. As a matter of law, there was no justification or cause to withdraw that afforded an entitlement to compensation. I, therefore, respectfully dissent.

. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1987) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

. Rule 68 provides in part: "If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.” Fed.R.Civ.P. 68.

. We always have the "power” and "obligation” to examine the district court's subject matter jurisdiction. See Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249, 1251 (11th Cir.1985) (citing Philbrook v. Glodgett, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); City of Kenosha, Wis. v. Bruno, 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973)). We review questions of ' subject matter jurisdiction de novo. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 408 (11th Cir.1999) (citations omitted).

. The docket in the district court reflects the following:
2/8/11 Complaint
3/28/11 Answer
Scheduling Order
Discovery deadline 12/16/11
Dispositive motions deadline 1/31/12
Trial 4/12
9/30/11 Plaintiff’s Motion for Extension of Time for all deadlines by 60 days
Order granting extension
Discovery deadline 1/16/12
Dispositive motions deadline 2/29/12
Trial 5/21/12
10/26/11 Plaintiff's Motion for Extension of Time for expert reports
*817 1/17/11 Joint Motion for 90 Extension of Time (filed by Plaintiff)
Order Granting Motion in Part
Discovery deadline 3/2/12
Dispositive motions deadline 4/16/12
Trial 7/12
2/16/11 Plaintiff’s Motion for 60-Day Extension of Time to complete discovery
Order Granting Motion for Extension of Time
Discovery Deadline 4/30/12
Plaintiff’s expert reports due 3/30/12
Dispositive motions deadline 5/15/12
No further extensions will be granted absent good cause shown
2/22/12 Plaintiff’s Motion to Modify Court’s Order Extending Deadlines
Order Denying Motion to Modify Extending Deadlines except:
Plaintiff’s expert report due 3/30/12
Defendant’s expert report due 4/16/12

. The exchange leading up to the March 9, 2012 email is unremarkable and simply shows a client asking for information (and lawyers not being very helpful):
Lewis to Cleveland: Hey I see they filed a [response] — they hadn’t as of 6 last night and I was hoping that somehow they wouldn’t[.] Anyway, it's just test symbols for me on [P]acer, so will you send it to me, and our reply? ... Thanks — lei.
Cleveland to Lewis: Hi LEL! See attached, which was filed after 10:30 last night.
Lewis to Cleveland: Thanks — just glancing at it, whatever they plan to produce by "March 30” will not work since depos are scheduled (at least to my knowledge) to start 3/26. Was the schedule ever finalized? Will you please send me the reply when it’s ready?
* * *
Cleveland to Lewis: We hope to have it finalized next week, so please continue to hold those dates. I’ll forward you what we file, and will keep you updated. Thanks. Have a good weekend!
Lewis to Cleveland: OK- but I sent a second message to you — What about Becky, the expert, and what about depo prep dates.... Where are you on those things?
Cleveland to Haynes: Would you like to respond, or should I? Normally when I do, she gets more saucy, and when you do, it seems to pacify her. You just have that Midas touch!
Haynes to Cleveland: Tell her I am handling and out of town until [n]ext week[.]
Cleveland to Lewis: Alicia is handling these matters. She is out of town until next week. I'll follow up with her and let you know. Thanks.
Evidentiary Hearing Notebook, at Tabs 33, 34.

. The operation of this Rule, particularly with respect to an abandoned plaintiff seeking new counsel late in litigation, both ratchets up the pressure on the plaintiff and works to discourage a new lawyer from taking her case.

. Alabama law does not address what constitutes just cause for a lawyer to voluntarily withdraw from representation and preserve an entitlement to compensation. The Alabama Supreme Court declined our invitation to provide guidance.

. Rule 68 can present particular problems for plaintiffs and their counsel in civil rights and employment discrimination claims. Marek is demonstrative. The plaintiff, suing under 42 U.S.C. § 1983, rejected an offer of judgment for $100,000 “including costs now accrued and attorney's fees.” Id. at 1241 n. 3 (quoting Marek, 473 U.S. at 9, 105 S.Ct. 3012). The case went to trial and plaintiff was awarded $60,000. Plaintiff filed a request for costs and attorney’s fees totaling around $171,000 ($32,000 for costs and fees incurred prior to the offer and $139,000 incurred after the offer). The parties agreed on the $32,000. However, the defendants opposed the $139,000, relying on Rule 68’s cost-shifting provision, and the Supreme Court agreed. Id.

. The district court adopted the Fifth Circuit standard applying Texas law based on the absence of Alabama law. See supra n. 7.

. The Augustson court gave examples of cases from various jurisdictions where just cause was found. These include "where the client attempts to assert a fraudulent claim; fails to cooperate; refuses to pay for services; degrades or humiliates the attorney; or retains other counsel with whom the original attorney cannot work.” Id.

. Unlike this case, in Augustson, counsel sought and obtained permission from the court to withdraw, citing Texas Disciplinary Rule of Professional Conduct 1.15(b). See Tex. Disciplinary R. Prof. Conduct 1.15(b)(4), (6) (allowing withdrawal where "a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent or with which the lawyer has fundamental disagreement,” or where "the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client”).

. No modern reported Texas case in a contingency fee case has ever found just cause sufficient to permit an attorney to withdraw but still be compensated. See David Hricik, Dear Lawyer: If You Decide It's Not Economical to Represent Me, You Can Fire Me as Your Contingent Fee Client, But I Agree I Will Still Owe You a Fee, 64 Mercer L.Rev. 363, 379 (2013).

. The attorney-client breakdown in Goyal occurred because of the client’s refusal to settle. The Seventh Circuit found that the attorney's withdrawal and collection of fees was justified under Illinois law because the "complete breakdown” in the attorney-client relationship was caused by the client’s recalcitrance in negotiating the case in the manner the attorney thought best. Id. at 543 (quoting Kannewurf v. Johns, 260 Ill.App.3d 66, 198 Ill.Dec. 381, 632 N.E.2d 711, 714 (1994)). Moreover, in Goyal, the retainer agreement provided for counsel's withdrawal and collection of fees if the client unreasonably withheld consent to a settlement. Id. at 540-41.
However, as the district court in this case pointed out, Goyal’s holding is contrary to the rulings in Augustson and the majority of jurisdictions, where "the failure of the client to accept a settlement offer does not constitute just cause for a withdrawing attorney to collect fees.” Augustson, 76 F.3d at 663. Nevertheless, the district court appears to have applied the minority Illinois standard to this case.

. The district court says that it declined to follow the “more stringent” Florida standard set forth in Faro. Yet, Faro is cited with approval in the Fifth Circuit’s opinion in August-son that the district court purports to adopt. See Augustson, 76 F.3d at 663.